## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JEFFREY MICHAEL REYNOLDS (#703637)**

**CIVIL ACTION**

**VERSUS**

**NO. 21-182-SDD-RLB**

**STATE OF LOUISIANA, ET AL.**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT**.

Signed in Baton Rouge, Louisiana, on October 31, 2023.

                                                                                         _____
                                                                                         **RICHARD L. BOURGEOIS, JR.**
                                                                                         **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JEFFREY MICHAEL REYNOLDS (#703637)

CIVIL ACTION

VERSUS

NO. 21-182-SDD-RLB

STATE OF LOUISIANA, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* R. Docs. 1 and 50. The State has filed an opposition to the petitioner's application. *See* R. Docs. 11 and 14. There is no need for oral argument or for an evidentiary hearing.

The petitioner, Jeffrey Reynolds, challenges his conviction, entered in 2015 in the Twenty-First Judicial District Court for the Parish of Livingston, State of Louisiana, on one count of attempted manslaughter, and one count of first-degree feticide. The petitioner contends that (1) he was provided with ineffective assistance of counsel (2) that he was not fully advised of all his rights as required by *Boykin*, and (3) that he was subjected to double jeopardy.

**Factual Background**

As summarized by the First Circuit, the facts are as follows: Petitioner entered pleas of nolo contendere on both counts, thus the facts were not fully developed. At the *Boykin* hearing, the parties agreed that discovery and other information in the record formed the basis for the pleas in this case. In accordance with the testimony presented at the preliminary examination hearing the following occurred. On October 23, 2012, officers of the Walker Police Department and Detective Jeff Beatty of the Livingston Parish Sheriff's Office were dispatched to petitioner's residence after he called 911. During the 911 call, a female later identified as petitioner's wife,

Paula Reynolds (the victim on count one), could be heard screaming for help and indicating that she was pregnant. When the police arrived on the scene, they observed a deceased baby with a head laceration and a brain laying on the kitchen floor and that the abdomen of victim Paula Reynolds had been cut open. The deceased baby's umbilical cord was still attached to victim Paula Reynolds and petitioner was kneeling over the victims (with his hands in Paula Reynolds' abdomen area). Petitioner was arrested and the instant charges were filed.

### Procedural History

On November 20, 2012, the petitioner was charged in the Twenty First Judicial District Court for the Parish of Livingston, State of Louisiana with attempted second-degree murder and first-degree feticide. The petitioner pled no contest on September 17, 2015, to attempted manslaughter and first-degree feticide. He was sentenced on the same day to twenty years without the benefit of probation, parole, or suspension of sentence on Count 1, and 15 years on Count 2 to run concurrently. After seeking post-conviction relief, the petitioner was granted permission to file an out-of-time appeal with the Louisiana First Circuit Court of Appeal. The petitioner's counsel filed an Ander's brief, but the petitioner also submitted a *pro se* brief arguing that his plea was involuntary. The First Circuit affirmed his conviction and sentence on April 6, 2018. *State v. Reynolds*, 2017-1574 (La. App. 1 Cir. 4/6/16), 2018 WL 1686111. By order dated September 28, 2018, the Louisiana Supreme Court refused to consider the petitioner's writ application because it was untimely. *State v. Reynolds*, 2018-1246 (La. 9/28/18), 253 So.3d 152.

The petitioner filed a *pro se* application for post-conviction relief at the Twenty-First Judicial District Court on or about January 25, 2018. The petitioner asserted: (1) ineffective assistance of counsel for failure to assert an intoxication defense because he was incapable of specific criminal intent, and (2) his plea was involuntary because the trial court failed to advise

him of his right to a bench trial. On June 20, 2009, the trial court denied the petitioner's claims. The First Circuit denied review "on showing made" on August 19, 2019, because he failed to include required documentation. *State v. Reynolds,* 2019-0696 (La. App. 1 Cir. 8/19/19), 2019 WL 3891509. The petitioner timely corrected the deficiencies in his writ application, which raised: ineffective assistance of counsel, involuntary plea, and double jeopardy. The First Circuit denied the application on January 6, 2020, noting that the petitioner had not raised the issue of double jeopardy with the trial court. *State v. Reynolds***,** 2019-1347 (La. App. 1 Cir. 1/6/20), 2020 WL 59807. The petitioner filed a second writ application with the First Circuit on April 9, 2020, reasserting the issues raised in his first application, but also adding a claim that his sentence was excessive. The First Circuit denied the writ application on June 19, 2010. *State v. Reynolds***,** 2020-0325 (La. App. 1 Cir. 6/19/20).

The petitioner filed a petition for a writ of certiorari with the Louisiana Supreme Court on July 8, 2020. The Louisiana Supreme Court denied review on January 12, 2021, specifically noting that the petitioner failed to show his counsel was ineffective. *State v. Reynolds*, 2021-01757 (La. 2/22/22), 333 So. 3d 438.

The petitioner filed a habeas petition with this Court on or about February 18, 2021, asserting (1) involuntary plea because trial court failed to inform him of his right to a bench trial, (2) ineffective assistance of counsel because he was incapable of specific criminal intent, and (3) double jeopardy. On October 29, 2021, the petitioner filed a Motion to Stay Proceedings and Hold Claims in Abeyance Until State Remedies are Exhausted (R. Doc. 20). Subsequently, on February 22, 2022, the Louisiana Supreme Court denied another writ application:

> Applicant fails to show that he pled guilty involuntarily. La.C.Cr.P.art.930.2. Applicant has now fully litigated two applications for post-conviction relief in state court. Similar to federal habeas relief, see 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only

under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8. Notably, the legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Applicant's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, applicant has exhausted his right to state collateral review. The district court is ordered to record a minute entry consistent with this per curiam. *State v. Reynolds*, 2021-01757 (La. 2/22/22), 333 So.3d 438.

The petitioner advised the Court on July 27, 2022, that his double jeopardy claim was pending at the Louisiana Supreme Court (R. Doc. 33). The First Circuit denied another writ application on May 20, 2022. *State v. Reynolds*, 2022-0283 (La. App. 1 Cir. 5/20/22), 2022 WL 1598644. The Louisiana Supreme Court denied the petitioner's application for reconsideration on September 7, 2022. *State v. Reynolds*, 2021-1757 (La. 9/7/22), 345 So. 3d 425. Finally, on November 1, 2022, the Louisiana Supreme Court denied the petitioner's writ application, noting that he had previously exhausted his right to state collateral review. *State v. Reynolds*, 2022-905 (La. 11/1/22), 349 So.3d 9. On July 7, 2023, the stay of this matter was lifted. *See* R. Doc. 49.

## Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than

the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State asserts that a deferential review of the state court proceedings and findings, as mandated by 28 U.S.C. § 2254(d) and (e), compels the conclusion that all the petitioner's claims must be rejected. As discussed below, the Court finds that the petitioner's claims are without merit.

## Substantive Review

### Waiver of Non-jurisdictional Defects

By entering a knowing, intelligent, and voluntary guilty plea, a defendant waives all non-jurisdictional defects preceding the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Scruggs*, 714 F.3d 258, 261-62 (5th Cir. 2013). This includes claims of ineffective assistance of counsel unless the alleged ineffectiveness relates to the voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (waiving claims of ineffective assistance, except for claims related to voluntariness of plea). As such, the only claims that

survive a guilty plea are those implicating the validity of the plea itself. *Tollett*, 411 U.S. at 267; *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). Under Louisiana law, a plea of *nolo contendere* has the same legal effect in a criminal proceeding as a plea of guilty. *State v. Peters,* 546 So.2d 829 (La. App. 1 Cir. 1989). Accordingly, petitioner's plea of no contest waived all non-jurisdictional defects in the same manner as a plea of guilty. *Id.; Johnson v. Estelle,* 704 F.2d 232, 235 (5th Cir.1983). As such the Court considers Petitioner's claims only to the extent they implicate the voluntariness of his guilty plea. *See Hill*, 474 U.S. at 56 (citing *Tollett*, 411 U.S. at 267).

A guilty plea is valid only if entered into voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). A plea is intelligently made when the defendant has "'real notice of the true nature of the charge against him.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). A plea is voluntary if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *United States v. Juarez*, 672 F.3d 381, 385-86 (5th Cir. 2012).

### Claim 1: Ineffective Assistance of Counsel

A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed

the petitioner by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

### *Right to Bail*

The petitioner asserts that his counsel was ineffective for failing to seek a bond reduction when his bond was increased to $500,000, and by failing to oppose the state's motion to revoke his bond. Petitioner remained at the Livingston Parish Detention Center for three years.

It is well-settled that habeas challenges to pretrial bail decisions are mooted by a petitioner's subsequent conviction. *See United States v. O'Shaughnessy*, 772 F.2d 112 (5th Cir. 1985) (right to pre-trial bail mooted by defendant's plea and sentence); *Wade v. Wichita County, Texas*, 2021 WL 5751441 (5th Cir. 2021) (claims about pretrial detention rendered moot by conviction and sentence); and *United States v. Frazier*, 220 F. App'x 294 (5th Cir. 2007) (court lacked jurisdiction to consider claim regarding revocation of pre-trial bond because the issue became moot upon conviction).

Petitioner waived his claims regarding pretrial detention when he pled no contest and was sentenced. These claims do not pertain to the validity of his guilty plea. As such, this claim for ineffective assistance of counsel is moot.

### *Failure to File Motion to Suppress*

Petitioner asserts that his trial counsel was ineffective for failing to file a motion to suppress the recorded statement given by the petitioner following his arrest. The petitioner alleges that he was still suffering from psychotic delusions and was heavily medicated when the

statement was given. This claim does not pertain to the validity of the petitioner's guilty plea and was waived upon the petitioner's plea and conviction. *See Franklin v. United States,* 589 F.2d 192, 194–95 (5th Cir. 1979) (guilty plea waived all nonjurisdictional complaints such as claims regarding Miranda warnings, coerced confessions, perjury and illegal searches and seizures.) As such, this claim for ineffective assistance of counsel is moot.

### *Failure to Present Intoxication Defense/Cruel and Unusual Punishment*

Petitioner asserts that his trial counsel was ineffective by choosing the easy way out by advising him to accept the plea deal instead of going to trial and presenting an intoxication defense. Petitioner asserts that because he was psychotic at the time the crimes were committed, and two doctors opined that he was unable to tell right from wrong during this psychotic episode he could not have had the requisite specific intent. The petitioner believes, "If there ever was a valid intoxication defense, this should be the landmark case in which all others should be compared." Petitioner additionally asserts that by advising the petitioner to plead to a crime for which he was not guilty, the petitioner was subjected to cruel and unusual punishment.

In response to the petitioner's application for post-conviction relief, the petitioner's trial counsel executed an affidavit. *See* R. Doc. 14-3, p. 182. Therein attorney Brock states that he had countless hours of discussion with the petitioner regarding specific intent and the effects of the drug taken by the petitioner. He further states that although he was aware that the petitioner did not know what he was doing when the crime was committed, he still advised the petitioner to take a plea because, due to the horrific nature of the crime, the intoxication defense was not likely to be successful. Attorney Brock felt the defense would not be successful in front of a judge or a jury, thus the reasonable plea offer was the better option.

In *Jones v. Butler*, 837 F.2d 691 (5th Cir. 1988), a case very similar to the instant matter, Jones woke his common-law wife, Shirley Ruffin, from sleep. He was naked, had shaved his head, and was repeatedly chanting the word "Satan" as he choked Ruffin until she fell to the floor unconscious. When Ruffin regained consciousness, she called the police. After a brief search, the body of Jones and Ruffin's 2-month-old son was found in the back yard. The autopsy revealed that the infant had died from a crushed skull.

Tests indicated that Jones had ingested a drug commonly known as PCP or "angel dust," and Jones indicated that he had ingested the drug immediately before the attacks. He was acutely psychotic when admitted to the hospital following his arrest. Jones was treated with Haldol and remained in the hospital for eight days. He was subsequently examined by two court-appointed psychiatrists who opined that it was not likely that Jones knew the difference from right and wrong during the crime due to drug-induced psychosis.

At trial, Jones' court-appointed attorney limited his defense solely to cross-examination of the State's witnesses. At the evidentiary hearing held in conjunction with Jones' habeas petition, his trial attorney testified that he did not pursue an intoxication defense because he believed it would not be successful before any jury in north Louisiana. The Fifth Circuit noted, "… his opinion that, as a fundamental matter, the voluntary intoxication defense simply would not succeed with any jury in Louisiana, as a practical matter, is almost always true." The Court concluded that counsel's testimony placed his defense of Jones within the wide latitude granted counsel in devising trial strategy and affirmed the District Court's determination that Jones received effective assistance of counsel.

The Fifth Circuit described the facts of *Jones* as grisly. The facts of the instant matter, that the petitioner believes would result in a successful voluntary intoxication defense, are

exponentially worse. Petitioner stabbed his wife, who was seven months pregnant, in the head before he cut her neck and abdomen. Petitioner then cut the baby out of his wife's abdomen and stabbed the baby. He then began removing his wife's internal organs while the baby was still attached via the umbilical cord.

When law enforcement arrived, the petitioner was kneeling over his wife with his hands near her abdomen. When the petitioner's wife rolled over, her intestines were visible. Large amounts of blood, as a well as feces and body tissue, were found in the kitchen and the adjoining bathroom on the cabinets, refrigerator, washer/dryer, bathroom sink/cabinet, walls, and other miscellaneous items. The baby was deceased upon arrival of law enforcement and had deep and superficial cuts to the back of the legs, buttocks, and back. There was a large uneven cut across the top of the baby's head that went through the skin and skull. This cut was almost from ear to ear. Brain matter was visible. Photographs were taken of the victims and the physical evidence.

The audio of the 911 call placed by the petitioner is also harrowing. The petitioner can be heard accusing his wife of having anal sex with Carl Robinson, saying "let's kill it,' telling his wife to "hurry up" when she says she is dying, and asking his wife "Why are you still alive? How are you still alive?" His wife, Paula, can be heard screaming and begging the petitioner to stop.

Due to the graphic photos that would be shown to a jury, the audio of the 911 that would be played for the jury, the media coverage, and possible political implications for the judge, petitioner's trial counsel believed that a voluntary intoxication defense would not be successful before a jury or a judge. As such, he recommended that the plaintiff take the 20-year plea offered to him instead of facing a maximum sentence of 50 years if convicted of attempted second-degree murder.

Considering the difficult choice faced by petitioner and his counsel, it cannot be said that the advice to accept the plea was deficient when weighed on the *Strickland* scale. As noted by the Court in *Jones*, a voluntary intoxication defense is almost always unsuccessful and the Court believed that to be true in a case with facts far less grisly than the instant matter. Under these circumstances, the advice to accept the plea represented part of an acceptable defense strategy. As such, this claim is without merit.

### Claim 2: Denial of Right to a Bench Trial

The petitioner asserts that when he asked his counsel about the possibility of a bench trial, his counsel threatened to withdraw and failed to raise the issue with the trial judge. He was then convinced by his counsel to plead no contest. The petitioner also asserts that, in conjunction with his plea, he was not advised of his right to a bench trial as stated in the trial court's minutes.

The United States Constitution neither confers nor recognizes a right of criminal defendants to have their cases tried before a judge alone. *Singer v. United States*, 380 U.S. 24, 35-36 (1965). There is likewise no such right under Louisiana law. *State v. Bazile*, 2012-2243, 144 So. 3d 719, 729 (La. 2013) ("[T]here is no explicit or implicit federal or state constitutional right to demand trial before a judge sitting alone."). As such, the petitioner's constitutional rights could not have been violated by his counsel's failure to seek a bench trial or the trial court's failure to advise him of this nonexistent right. This claim is without merit.

### Claim 3: Double Jeopardy

Petitioner asserts that his convictions violate the Double Jeopardy clause of the Fifth Amendment because he did not have the specific intent to commit two separate crimes. First, his claim is foreclosed by petitioner's no contest plea. *Agee v. Barksdale*, 2016 WL 3387515, at *9 (W.D. Va. June 15, 2016) (dismissing double jeopardy claim as waived pursuant to a plea of no

contest). Moreover, this claim fails on the merits. The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides: "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." That protection prohibits multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977).

Where "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter,* 459 U.S. 359, 368-369 (1983). As the result of a robbery of a supermarket in which he used a revolver, Hunter was convicted in a Missouri state court of both first-degree robbery and armed criminal action, and pursuant to the applicable statutes was sentenced to concurrent prison terms of 10 years for robbery and 15 years for armed criminal action. The Court concluded that the Missouri Legislature's intent was crystal clear that punishment for violations of the applicable conduct was to be cumulative, and that the Court was bound to accept the Missouri court's construction of that State's statutes.

The Supreme Court of Louisiana has concluded that the state legislature intended, when it enacted the feticide statutes, a perpetrator be penalized separately for killing an unborn child where the mother was also killed. In *State v. Smith,* 676 So.2d 1068 (La. 1996) the defendant was convicted of manslaughter and feticide after he choked to death his pregnant girlfriend. The court concluded that, while double jeopardy might prohibit successive trials for manslaughter and feticide if the same evidence were used to convict for both, the fact that the convictions were obtained in a single proceeding avoided double jeopardy concerns. The unanimous opinion of the

Louisiana Supreme Court found that it was the intent of the legislature for multiple punishments to be available in this setting.

Petitioner's case falls within the holdings that have permitted convictions such as his. This claim is without merit.

## Conclusion

The record shows that the petitioner entered into the plea voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. Petitioner had notice of the charges against him, and his plea was not the result of force, threats, improper promises, misrepresentations, or coercion. The no contest 20-year plea represents a voluntary and intelligent choice versus the alternative course of action, which was trial where a voluntary intoxication defense was not likely to be successful and could have resulted in a sentence of 50 years.

The petitioner has not shown any decision by the state courts that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Nor has the petitioner show any decision that was based on an unreasonable determination of the facts considering the evidence presented in the State court proceeding. As such, the petitioner is not entitled to habeas relief.

## Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*,

211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of petitioner's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be denied and that this proceeding be dismissed with prejudice. It is further recommended that in the event the petitioner pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on October 31, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**